## T. A. CONWELL v. W. R. KUYKENDALL.

1. LANDLORD'S *Lien.* A landlord has a lien on the crops for the rent, and also for the costs of the action brought to enforce the lien by attachment.

2. JUDGMENT *Rendered in Time.* Where a judgment in an action tried before a justice of the peace is rendered and publicly announced by the justice by the fourth day after the close of the trial, both days inclusive, §115, ch. 81 of Comp. Laws of 1879 is substantially complied with, although the clerical work of entering the judgment on the docket is not completed until a few days thereafter.

3. BILL OF EXCEPTIONS, *Must be Signed, When.* In order that the supreme court may examine and pass upon questions arising upon matters preserved in a bill of exceptions in a case tried before a justice of the peace, the bill must be signed and sealed within ten days from the day on which the judgment was given in the action. (Comp. Laws 1879, ch. 81, §112a; *The State v. Schoenewald,* 26 Kas. 288.)

### *Error from Shawnee District Court.*

AT the January Term, 1883, the district court affirmed a judgment in a certain action wherein *Kuykendall* was plaintiff and *Conwell* defendant. This order *Conwell* brings here for review. The opinion states the facts.

*H. H. Harris,* for plaintiff in error.

*J. W. Campbell,* for defendant in error.

Conwell v. Kuykendall.

The opinion of the court was delivered by

HORTON, C. J.: This was an action originally brought by attachment, before a justice of the peace, by defendant in error, against plaintiff in error, for the collection of rent due on farming land, and for labor and goods sold and delivered, amounting in all to $150. The plaintiff in error filed an offset of $181. The justice of the peace before whom the action was brought, being sick, and unable to attend to business at the time set for the trial, at his request and by consent of parties the action was tried before another justice, who, after hearing the testimony of witnesses and arguments of counsel, sustained the attachment, and awarded the defendant in error a judgment of $62.60 and costs of suit. The trial was commenced October 3, 1882, and continued by consent from time to time to the 16th of October, 1882; and by consent of parties the justice then took the case under advisement till the 19th of October, 1882, when he rendered his judgment. The decision was rendered and announced on the said 19th of October, but the clerical work of entering it on the docket was not done until the 24th of October following, on account of the continued sickness and incapacity of one of the justices, and the press of other official business of the other. Subsequently, a petition in error was filed in the district court of Shawnee county by plaintiff in error, to reverse the judgment of the justice of the peace; and at the January term of that court for 1883, the judgment of the justice was affirmed, with costs.

It is assigned as error, that while a landlord has a lien on the crops for rent, the statute does not embrace the costs. Therefore that it was erroneous to order the attached property to be sold for costs.

Sec. 24, ch. 55, Comp. Laws of 1879, reads:

"Any rent due for farming land shall be a lien on the crop growing or made on the premises. Such lien may be enforced by action, and attachment therein, as hereinafter provided."

Sec. 28 of the said ch. 55 is as follows:

"In an action to enforce a lien on crops for rent of farming

lands, the affidavit for an attachment shall state that there is due from the defendant to the plaintiff a certain sum, naming it, for rent of farming lands, describing the same, and that plaintiff claims a lien on the crop made on such land. Upon making and filing such affidavit and executing an undertaking as is prescribed in the preceding section, an order of attachment shall issue as in other cases, and shall be levied upon such crop, or so much thereof as may be necessary; and all other proceedings in such attachment shall be the same as in other actions."

Sec. 222 of the code, relating to proceedings upon attachments, prescribes:

"If judgment be rendered for the plaintiff, it shall be satisfied as follows: so much of the property remaining in the hands of the officer, after applying the moneys arising from the sale of perishable property, and so much of the personal property and lands and tenements, if any, whether held by legal or equitable title, as may be necessary to satisfy the judgment, shall be sold by order of the court, under the same restrictions and regulations as if the same had been levied on by execution; and the money arising therefrom, with the amount which may be recovered from the garnishee, shall be applied to satisfy the judgment and costs. If there be not enough to satisfy the same, the judgment shall stand, and execution may issue thereon for the residue, in all respects as in other cases. Any surplus of the attached property or its proceeds shall be returned to the defendant."

As the proceedings to enforce the lien for rent by action and attachment are the same as in other actions of attachment, the costs followed the judgment, and no error was committed in ordering the proceeds of the attached property to be applied to satisfy the costs as well as the judgment. It is claimed by plaintiff in error that as the judgment was not actually entered of record until the 24th day of October, 1882, more than four days after the close of the trial, the judgment is erroneous, and reversible for irregularity and non-compliance with the statute. *Stewart v. Waite*, 19 Kas. 218, is cited as decisive of this point. That case is not applicable, because there the judgment was both *rendered* and

*entered* one day later than the fourth day after the day on which the cause had been tried by the justice.    While " render" and " entered" are both used in § 115 of the justices act, the only construction that obviates all difficulties is to interpret the word " entered" as used therein in the sense of " rendered."    When the judgment is formed in the mind of the justice and then publicly announced by him, it is " rendered." In a literal sense, the writing-up of the judgment of the docket is " entering" it, but the object of the statute is to deny to the justice discretion to postpone judgment beyond the time prescribed therein; and in our opinion the forming of the judgment in the mind of the justice, and the public announcement thereof within the time prescribed, comply with the legislative intent of the law, and satisfy the object thereof. This construction is supported by the connection in which the words " render" and " entered" are used in the various clauses of § 115; by the general rules controlling the rendition of judgments in all the courts; by the universal practice in justices courts, of first rendering the judgment and then entering or writing it in full on the docket on some day subsequent thereto, as soon as the engagements of the officer will permit.

In the case at bar, the trial was ended October 16, 1882, and taken under advisement by consent of parties, until October 19, 1882, at 1 o'clock P. M., and on October 19, 1882, at the hour specified, the judgment was rendered.    The fact that the clerical work of entering it on the docket was not done until the 24th of October, 1882, does not make the judgment erroneous or void.    Sec. 115, ch. 81, of Comp. Laws of 1879, was substantially complied with, as the judgment was rendered by the fourth day after the close of the trial, both days inclusive.

Other questions are presented in the briefs, but we have already taken more time with this case than it is entitled to, as it appears from the record that the bill of exceptions was not signed within ten days from the day on which judgment was rendered. (Comp. Laws of 1879, ch. 81, §112a.)    Therefore

there is no sufficient transcript before us to demand a consideration of the merits of the matters preserved in the bill of exceptions.

The judgment of the district court will be affirmed.

All the Justices concurring.